# IN THE SUPREME COURT

# STATE OF NORTH DAKOTA

2019 ND 46

Riley S. Kuntz,                                                                                     Plaintiff and Appellant

v.

State of North Dakota, Bureau of Criminal
Investigation, Criminal Justice Information
Sharing Director, Department of Transportation,
Attorney General Wayne Stenehjem in his
official and individual capacity, Deputy Director
of BCI Lonnie Grabowska in his official and
individual capacity, Liz Brocker in her official
and individual capacity, and Mary Kluzak in
her official and individual capacity,                                          Defendants and Appellees

No. 20180135

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Riley S. Kuntz, self-represented, Dickinson, N.D., plaintiff and appellant.

Matthew A. Sagsveen (argued), Solicitor General, and Courtney R. Titus (appeared), Assistant Attorney General, Bismarck, N.D., for defendants and appellees.

**Kuntz v. State**

**No. 20180135**

**Tufte, Justice.**

[¶1]    Riley Kuntz appeals from a judgment granting the State's motion for judgment on the pleadings and dismissing his claims with prejudice against the State, state agencies, and state officials in their official and individual capacities. We conclude the district court erred in dismissing his open records law claim under N.D.C.C. § 44-04-21.2. We further conclude, however, the court did not err in dismissing his remaining claims and in denying his motions for default judgment, to amend the complaint, and to award sanctions. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2]    In August 2016, Kuntz submitted written requests for documents under the North Dakota open records law to the Bureau of Criminal Investigation ("BCI"), the Department of Transportation ("DOT"), and the Criminal Justice Information Sharing ("CJIS") Director, seeking records relating to an agreement with "the FBI authorizing or allowing the search of any ND Driver License or non-photo identification database pursuant to a request from any government agency for the purposes of FACE or FIRS or NGI-IPS." Responding on BCI's behalf, Liz Brocker denied his request. Brocker, also responding on CJIS's behalf, requested additional information to clarify his request. Kuntz replied, and Brocker denied his request. Responding on DOT's behalf, Mary Kluzak requested additional information to clarify his request, and Kuntz replied. Kluzak requested payment of a search and duplication fee to fulfill the request. Kuntz paid the fee and was provided a two-page attorney general opinion.

[¶3]    In December 2016, Kuntz submitted a letter under the Freedom of Information Act ("FOIA") to the federal Government Accountability Office ("GAO") requesting records related to an agreement between the FBI and any government agency

authorizing the search of the North Dakota driver license information databases. In a February 2017 letter, the GAO responded and confirmed the existence of a Memorandum of Understanding ("MOU") between the FBI, CJIS, Attorney General, and BCI concerning searches of the North Dakota Attorney General BCI facial recognition photo repository. However, because the GAO obtained the MOU from the FBI, the GAO informed him it was GAO policy not to release records from its files that originate in another agency or organization.

[¶4] On July 20, 2017, Kuntz submitted written requests under the open records law to the North Dakota Attorney General, BCI, CJIS Director, and DOT, stating in part: "Please supply the Memorandum of Understanding between the FBI, Criminal Justice Information Services Division and ND Attorney General, BCI: Concerning the Search of Probe Photos Against the ND Attorney General of Criminal Investigation Photo Repository." On July 24, 2017, Lonnie Grabowska, on BCI's behalf, replied in a letter requesting additional clarification, and Kuntz replied on August 2, 2017. Kluzak, on DOT's behalf, replied requesting funds for the fulfillment of the request. Kuntz replied to the DOT and did not pay the fee. Kluzak did not respond.

[¶5] On August 16, 2017, Kuntz requested the Attorney General to review agency noncompliance with the open records law. On September 5, 2017, Kuntz notified the Attorney General of noncompliance by the BCI, CJIS, and DOT regarding the release of the MOU, and the Attorney General responded:

> A request must reasonably identify specific records (N.D.C.C. § 44-04-18(2)). It is not a violation of the law if the reason a public entity denied a request is because you did not reasonably identify specific records. . . . Accordingly, we will not take any further action in response to your letter or any future correspondence from you in this regard.

[¶6] On September 19, 2017, Kuntz commenced this action by serving a summons and complaint, naming as defendants the State, the BCI, the CJIS Director, the DOT, Attorney General Wayne Stenehjem in his official and individual capacity, BCI Deputy Director Grabowska in his official and individual capacity, and Brocker and Kluzak in their official and individual capacities (collectively, the "State"). The

2

parties do not dispute on appeal that while the state Solicitor General accepted service on behalf of the defendants in this case, Kuntz did not personally serve any of the defendants in their individual capacities.

[¶7] Kuntz's complaint claims violations of state open records laws; alleges claims for fraud, federal civil rights violations and attorney's fees; and also seeks declaratory relief. His complaint essentially claims the State, through its various agencies, had denied the existence of, or failed to respond to his open records request for, the specified MOU document. On September 22, 2017, after receiving service of the complaint, the Solicitor General mailed an MOU document to Kuntz, described by the Solicitor General as appearing to be the document requested.

[¶8] On October 11, 2017, the State responded to the complaint with a joint answer served by mail. In its answer the State admitted the Attorney General's Office and CJIS did not provide a response to the request for the MOU. On October 16, 2017, Kuntz filed the summons and complaint in the district court. On October 24, 2017, Kuntz filed a motion in the district court seeking a default judgment and a motion for sanctions against the State's counsel. The State opposed the motions. In a December 1, 2017, order, the district court denied both of Kuntz's motions.

[¶9] On January 19, 2018, the State moved the district court for judgment on the pleadings, arguing Kuntz's complaint failed to state a claim for which relief can be granted. Kuntz opposed the State's motion and moved the court for leave to amend the complaint. In its March 29, 2018, order, the district court granted the State's motion dismissing Kuntz's claims with prejudice. The court also denied Kuntz's motion for leave to amend his complaint.

II

[¶10] Kuntz argues the district court erred in denying his motion for a default judgment under N.D.R.Civ.P. 55 and in denying his motion for sanctions.

A

3

[¶11] Under N.D.R.Civ.P. 12(a)(1)(A), a defendant has 21 days to answer a complaint. Rule 55(a), N.D.R.Civ.P., provides that "[i]f a party against whom a judgment for affirmative relief is sought has failed *to plead or otherwise appear* and the failure is shown by affidavit or otherwise, the court *may* direct the clerk to enter an appropriate default judgment in favor of the plaintiff and against the defendant." (Emphasis added.) Rule 55(b), N.D.R.Civ.P., states that "[a] default judgment may be entered against the state, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." This Court has explained that "default alone is not enough to obtain judgment under the rule." *Bell v. State*, 1998 ND 35, ¶ 11, 575 N.W.2d 211.

[¶12] Whether to grant a default judgment rests within the district court's discretion. *Bell*, 1998 ND 35, ¶ 11, 575 N.W.2d 211. The court also has "broad discretion in determining the quality of proof necessary to support granting a default judgment." *Id.* A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Koenig v. State*, 2018 ND 59, ¶ 7, 907 N.W.2d 344. The court's refusal to grant default judgment is not an abuse of discretion absent proof of "prejudice[] by the delay in the proceedings." *Id.*; *see also Filler v. Bragg*, 1997 ND 24, ¶ 11, 559 N.W.2d 225 ("By its very language, Rule 55 provides default judgment may not be obtained against a party who has appeared.").

[¶13] Kuntz argues the district court erred in finding "unsigned affidavits" are the proper method of service by mail; in finding the State filed a timely answer; and in failing to cite contrary authority in dismissing his motion. To understand his arguments, we note that when the State served its joint answer on Kuntz by mail on October 11, 2017, the affidavit of service accompanying the State's documents was not signed. The State subsequently filed the executed affidavit of service in the district court.

[¶14] The State asserts the affidavit of service included with a properly served document is unsigned so as to comply with the statements being attested to in the

4

affidavit. The State's affidavit of service by mail for the joint answer provides, in relevant part: "I am of legal age and on the 11th day of October, 2017, I served the attached . . . upon Riley S. Kuntz by placing a true and correct copy thereof in an envelope addressed as follows . . . and depositing the same, with postage prepaid, in the United States mail at Bismarck, North Dakota." The State maintains that its staff cannot sign a document stating that they placed a true and correct copy in an envelope and deposited it in the mail, until they have actually done so.

[¶15] In its December 1, 2017, order, the district court found it was uncontroverted that the State's joint answer had been served on October 11, 2017, which comports with the signed and sworn affidavit of service the State filed in the district court. The court also noted Kuntz's motion for default was filed on October 24, 2017, which was after the State filed its joint answer with the court on October 17, 2017. The court found no basis for entry of a default judgment under N.D.R.Civ.P. 55 because the State had appeared and filed a joint answer to the complaint. The district court ruled that entry of a default would be an affront to giving the parties a full and fair opportunity to adjudicate the matters on their merits. The court found Kuntz had notice of the State's intent to defend against the claims before he served and filed his motion for default. The court concluded the affidavit of service was proper under N.D.R.Civ.P. 12 and timely. The court also held that the unsigned affidavit included with the served copy is the correct method of service by mail and that only after the document is placed in the mail can there be a signed affidavit attesting to the mailing.

[¶16] We agree that the State's practice of including an unsigned affidavit with documents served by mail is not improper. Kuntz is mistaken when he contends the State's inclusion of an unsigned copy of the affidavit of service with the joint answer mailed to him somehow renders service of the answer invalid. The executed affidavit of service provides proof of when service by mailing occurred. The affidavit of service by mail signed and filed with the district court on October 17, 2017, definitively establishes the State's answer was served on October 11, 2017.

5

[¶17] Kuntz suggests the State is misleading the district court by filing a copy of the affidavit different from that which was mailed to him. However, the purpose of the affidavit of service is to establish record evidence of when the document was mailed. *See* N.D.R.Civ.P. 5(b)(3)(C) ("A document that is not required to be filed, or that will be served on a person exempt from electronic service, is served under this rule by . . . mailing it to the person's last known address, in which event service is complete upon mailing."); *see also* N.D.R.Civ.P. 4(k) (providing contents for an affidavit of mailing). Although Kuntz may also be entitled to receive a copy of the signed affidavit of service filed with the district court, *see* N.D.R.Civ.P. 5(a)(1)(F) (requiring "every document filed with the clerk or submitted to the judge" to be served on every party), his right to receive a copy of the signed affidavit filed with the court does not undermine the affidavit for purposes of establishing service of the State's answer.

[¶18] The district court found the State had appeared and filed an answer before Kuntz moved for default and Kuntz had notice of the State's intent to defend in the proceedings. We conclude the district court did not abuse its discretion in denying Kuntz's motion for default judgment under N.D.R.Civ.P. 55.

B

[¶19] Kuntz argues the district court erred in denying his motion for sanctions under N.D.C.C. § 27-10-01.2 and N.D.R.Civ.P. 11 against the State's counsel.

[¶20] "The district court may award sanctions against an attorney, a represented party, or both, if they violate or are responsible for a violation of N.D.R.Civ.P. 11(b)." *McColl Farms v. Pflaum*, 2013 ND 169, ¶ 46, 837 N.W.2d 359; *see also* N.D.R.Civ.P. 11(c)(1). The court has discretion in deciding whether to impose sanctions, and this Court will not reverse its decision unless the court abused its discretion. *Heinle v. Heinle*, 2010 ND 5, ¶ 27, 777 N.W.2d 590. Factual determinations on the issue are reviewed under the clearly erroneous standard. *Id.* We have also said the district court has broad discretion in making contempt decisions. *Upton v. Nolan*, 2018 ND 243, ¶ 18, 919 N.W.2d 181. Our review of the court's contempt decision is also limited to the abuse of discretion standard. *Id.*

6

[¶21]  Here, in denying sanctions, the district court found that "by every objective standard," neither the defendants nor their attorneys made willful misrepresentations of fact in their answer to the claims under N.D.C.C. § 44-04-21.2.  The court found the joint answer and defenses asserted were appropriate as allowed by law.  The court further found that the State and its attorneys did not make willful misrepresentations of material fact; that for purposes of sanctions, no prejudice or harm had been caused by delay in receiving the subject MOU; and that reference to the MOU in the answer was appropriate in time sequence.  The court further found the State had not needlessly increased the cost and length of litigation.

[¶22]  To the extent Kuntz argues the district court's findings were not sufficient, did not disclose the basis for conclusions of law in its decision, and failed to cite contrary authority in dismissing his arguments as without merit, we conclude the court's findings are sufficient for us to understand its decision.  *Cf.* N.D.R.Civ.P. 52(a)(3) ("The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.").

[¶23]  On the basis of the findings, we conclude the district court did not abuse its discretion in refusing to impose sanctions.


III

[¶24]  Kuntz argues the district court erred in granting the State's motion for judgment on the pleadings, dismissing all of his claims with prejudice, and denying his motion to amend his complaint.


A

[¶25]  Our standard for reviewing the district court's decision granting a motion for judgment on the pleadings is well established:

> A party may move for judgment on the pleadings under Rule 12(c), N.D.R.Civ.P.  A pleading should not be dismissed under N.D.R.Civ.P. 12(c) unless it appears *beyond doubt that no set of facts support a party's claim* which would entitle him to relief.  *Nelson v. McAlester Fuel Co.*, 2017 ND 49, ¶ 20, 891 N.W.2d 126 (citing *Tibert*

*v. Minto Grain*, 2004 ND 133, ¶ 7, 682 N.W.2d 294). We view the pleading in the light most favorable to the pleading party, and the allegations are taken as true. *Nelson*, at ¶ 20. A district court's decision granting judgment on the pleadings under N.D.R.Civ.P. 12(c) is reviewed de novo. *Nelson*, at ¶ 20.

*Zundel v. Zundel*, 2017 ND 217, ¶ 10, 901 N.W.2d 731 (emphasis added). We have said that the court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a), N.D.R.Civ.P., which sets forth the requirements for pleading a claim, calling for a short and plain statement of the claim showing the pleader is entitled to relief. *Tibert v. Minto Grain, LLC*, 2004 ND 133, ¶ 7, 682 N.W.2d 294. A district court should grant a motion to dismiss "only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted." *Id.*; *see also Riverwood Commercial Park v. Standard Oil Co.*, 2007 ND 36, ¶ 8, 729 N.W.2d 101; *Kouba v. State*, 2004 ND 186, ¶¶ 4-6, 687 N.W.2d 466. Further, we will affirm a court's decision to grant a judgment of dismissal for failure to state a claim upon which relief can be granted under N.D.R.Civ.P. 12(b)(6) if we cannot discern a potential for proof to support it. *Vandall v. Trinity Hospitals*, 2004 ND 47, ¶ 5, 676 N.W.2d 88.

B

[¶26] Kuntz argues that the district court erred in dismissing his claims under the North Dakota open records law in N.D.C.C. §§ 44-04-18 and 44-04-21.2.

[¶27] Generally, a public entity must disclose all non-confidential records in its possession. *See* N.D.C.C. § 44-04-18(1); *Riemers v. City of Grand Forks*, 2006 ND 224, ¶ 13, 723 N.W.2d 518. A public entity is not required, however, to disclose a record not in its possession or custody. N.D.C.C. § 44-04-18(4); *Riemers*, at ¶ 3. Under N.D.C.C. § 44-04-18(8), "[t]his section is violated when a person's right to review or receive a copy of a record that is not exempt or confidential is *denied* or *unreasonably delayed* or when a fee is charged in excess of the amount authorized in subsections 2 and 3." (Emphasis added.) "An entity may require payment before locating, redacting, making, or mailing the copy." N.D.C.C. § 44-04-18(2).

8

[¶28] Section 44-04-18, N.D.C.C., is violated when a public entity fails to provide the copy of a record within a reasonable time. The attorney general has issued several opinions to executive branch agencies and political subdivisions advising on what circumstances constitute unreasonable delay:

> Whether records have been produced within a reasonable time will depend on the facts of a given situation. A delay may be appropriate for a number of reasons, including reviewing large volumes of documents to respond to a request, excising closed or confidential information, availability and workload of staff who can respond to the request, balancing other responsibilities of the public entity that demand immediate attention, accessing the records requested, consulting with an attorney when there is reasonable doubt whether the records are open to the public, sorting out what has previously been provided to a requester, and seeking clarification on vague requests.

N.D. Op. Att'y Gen. 2017-O-09, at 2 (Nov. 1, 2017) (collecting other attorney general opinions in footnote 7). "Although N.D.C.C. § 44-04-18 does not usually require an immediate response, the delay permitted generally will be measured in a few hours or a few days rather than several days or weeks." N.D. Op. Att'y Gen. 2011-O-07, at 3 (May 26, 2011). What constitutes an unreasonable delay varies, largely depending on the circumstances. *See, e.g.*, N.D. Op. Att'y Gen. 2014-O-21 (Nov. 21, 2014) (violation for 11-day delay); N.D. Op. Att'y Gen. 2017-O-06 (Aug. 23, 2017) (violation for 25-day delay); N.D. Op. Att'y Gen. 2014-O-06 (July 14, 2014) (violation for 2-month delay); N.D. Op. Att'y Gen. 2015-O-17 (Oct. 19, 2015) (violation for 9-month delay).

[¶29] Attorney General opinions interpreting statutes guide executive branch officers and political subdivisions until a judicial decision reaches a different interpretation. *See Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, ¶ 47, 598 N.W.2d 820. "We give respectful attention to the attorney general's opinions and follow them when we find them persuasive." *Sorum v. Dalrymple*, 2014 ND 233, ¶ 10, 857 N.W.2d 96 (quoting *Holmgren v. N.D. Workers Comp. Bureau*, 455 N.W.2d 200, 204 (N.D. 1990)). "However, Attorney General opinions are not binding upon this court and we will not follow them if they are inconsistent with the statutory interpretation that the

court deems reasonable." *Id.* (quoting *Sauby v. City of Fargo*, 2008 ND 60, ¶ 12, 747 N.W.2d 65).

[¶30] This case involves whether Kuntz sufficiently pled a civil action under N.D.C.C. § 44-04-21.2(1) for a violation of N.D.C.C. § 44-04-18 on the basis of the State defendants' delay in responding to his July 2017 open records request. The State argues Kuntz failed to state a claim for relief for a violation of N.D.C.C. § 44-04-18. The State contends that the civil action remedy provided in N.D.C.C. § 44-04-21.2(1) was no longer available to Kuntz when the State complied with N.D.C.C. § 44-04-21.2(3), because the State had corrected "any real or perceived" violation by providing the MOU to Kuntz before his civil action was actually filed, rather than merely commenced, and because Kuntz had not sufficiently alleged he was harmed or prejudiced by the delay.

[¶31] In *DeForest v. N.D. Dep't of Transp.*, 2018 ND 224, ¶¶ 8-9, 918 N.W.2d 43, we reiterated our standard for construing statutes:

> "Statutory interpretation is a question of law, fully reviewable on appeal." *Teigen v. State*, 2008 ND 88, ¶ 19, 749 N.W.2d 505. "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." *Zajac v. Traill Cty. Water Res. Dist.*, 2016 ND 134, ¶ 6, 881 N.W.2d 666; *see also* N.D.C.C. § 1-02-02. "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." *Robot Aided Mfg., Inc. v. Moore*, 1999 ND 14, ¶ 12, 589 N.W.2d 187 (quoting N.D.C.C. § 1-02-03). "The primary purpose of statutory interpretation is to determine the intention of the legislation." *Zajac*, at ¶ 6. Our focus is on what meaning was intended by words and phrases enacted into law. "If the language of a statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.'" *Id.* at ¶ 6 (quoting N.D.C.C. § 1-02-05).
>
> We "construe[] statutes to avoid absurd or illogical results." *State v. Stegall*, 2013 ND 49, ¶ 16, 828 N.W.2d 526 (quoting *Mertz v. City of Elgin*, 2011 ND 148, ¶ 7, 800 N.W.2d 710); *see* N.D.C.C. § 1-02-38(4) ("In enacting a statute, it is presumed that: . . . [a] result feasible of execution is intended."). Statutes are interpreted in context. *In Interest of K.G.*, 551 N.W.2d 554, 556 (N.D. 1996). They are "construed as a whole and are harmonized to give meaning to related

provisions." *Indus. Contractors, Inc. v. Taylor*, 2017 ND 183, ¶ 11, 899 N.W.2d 680.

[¶32] We construe the language of N.D.C.C. § 44-04-21.2 to ascertain whether Kuntz may pursue his action in the district court. Section 44-04-21.2, N.D.C.C., states in relevant part:

> 1. A violation of section 44-04-18, 44-04-19, 44-04-19.2, 44-04-20, or 44-04-21 may be the subject of a civil action brought by an interested person or entity. For an alleged violation of section 44-04-18, the complaint must be accompanied by a dated, written request for the requested record. If a court finds that any of these sections have been violated by a public entity, the court may award declaratory relief, an injunction, a writ of prohibition or mandamus, costs, disbursements, and reasonable attorney's fees against the entity. For an *intentional or knowing violation of section 44-04-18*, 44-04-19, 44-04-19.2, 44-04-20, or 44-04-21, the court may also award damages *in an amount equal to one thousand dollars or actual damages caused by the violation, whichever is greater*. An action under this subsection must be commenced within sixty days of the date the person knew or should have known of the violation or within thirty days of issuance of an attorney general's opinion on the alleged violation, whichever is later. Venue for an action is in the county where the entity has its principal office or, if the entity does not have a principal office within the state, in Burleigh County. . . . .
>
> 3. The remedies provided in this section *are not available* if a violation of section 44-04-18, 44-04-19, 44-04-19.2, 44-04-20, or 44-04-21 *has been corrected before a civil action is filed and no person has been prejudiced or harmed by the delay*. An interested person or entity may not file a civil action under this section seeking attorney's fees or damages, or both, until at least three working days after providing notice of the alleged violation to the chief administrative officer for the public entity. This subsection does not apply if the attorney general has found under section 44-04-21.1, on a prior occasion, that the public entity has violated section 44-04-18, 44-04-19, 44-04-19.2, 44-04-20, or 44-04-21.

(Emphasis added.)

[¶33] The State contends a civil action under N.D.C.C. § 44-04-21.2(1) is not available because any alleged violation was corrected when it provided the MOU to Kuntz before he filed the previously commenced action in the district court. For the

11

remedies in N.D.C.C. § 44-04-21.2(1) to be unavailable, however, the plain language of N.D.C.C. § 44-04-21.2(3) requires that a violation be "corrected" *and* that no person be "prejudiced or harmed" by the violation. While an unreasonably delayed disclosure under N.D.C.C. § 44-04-18(8) that does not cause prejudice or harm may be "corrected" by belatedly disclosing the requested document, for purposes of N.D.C.C. § 44-04-21.2, the remedies for a violation remain available when an unreasonable delay causes the requester prejudice or harm. In other words, for a requester to access this section's remedies when an unreasonable delay in providing records causes the requester prejudice or harm, the violation cannot be corrected by merely providing the records. Correcting an unreasonable delay would necessarily require also "correcting" any actual prejudice or harm, if possible.

[¶34] In his complaint, in addition to alleging unreasonable delay and intentional violations of N.D.C.C. § 44-04-18, Kuntz has also alleged harm or damages resulting from the violation. Section 44-04-21.2(1), N.D.C.C., allows the district court to award damages in the civil action "in an amount equal to one thousand dollars or actual damages caused by the violation, whichever is greater." Under N.D.R.Civ.P. 12(c), a motion for dismissal of the complaint should be granted only if it is disclosed with certainty "the impossibility of proving a claim" on which relief can be granted. *Tibert*, 2004 ND 133, ¶ 7, 682 N.W.2d 294. Although the State asserts "any real or perceived" violation was corrected when it provided the MOU, construing the complaint in the light most favorable to Kuntz and taking its allegations as true, we conclude Kuntz has pled sufficient facts to survive the State's motion for judgment on the pleadings. At this stage of the proceedings, we decline to say that the alleged violation was fully corrected before the action was filed and that Kuntz has not suffered any prejudice or harm from an unreasonable delay in this case.

[¶35] We therefore conclude the district court erred in dismissing his civil action under N.D.C.C. § 44-04-21.2, and we remand this case for further proceedings relating only to alleged violations of N.D.C.C. § 44-04-18 with respect to Kuntz's July 2017 requests to the State defendants.

12

C

[¶36] Kuntz argues that the district court erred in dismissing his § 1983 claims alleging the State deprived him of his rights, privileges, and due process. The State responds that Kuntz cannot state a claim for relief under 42 U.S.C. § 1983, and related claims under §§ 1985, 1986, and 1988, because the sole alleged violation of his rights is under the state's open records law.

[¶37] Because the parties do not dispute that none of the defendants was served in an individual capacity, the matters before us involve only the State, state agencies, and individuals in their official capacity as defendants. In *Wheeler v. Burgum*, 2018 ND 109, ¶ 6, 910 N.W.2d 845, this Court explained:

> "Neither a state, an entity with Eleventh Amendment immunity, nor state officials sued in their official capacity are 'persons' under 42 U.S.C. § 1983, and neither is subject to suit under the statute in federal or state court." *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 37, 576 N.W.2d 505. A claim seeking only injunctive relief may proceed against a state official in his official capacity because official-capacity actions seeking only prospective relief are not treated as actions against the State. *Livingood v. Meece*, 477 N.W.2d 183, 190 (N.D. 1991).

[¶38] Generally, "[a] claim under § 1983 must allege that conduct of a defendant acting under color of state law deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or by the laws of the United States." *Jensen v. Zuern*, 517 N.W.2d 118, 123 (N.D. 1994) (citing *Howlett v. Rose*, 496 U.S. 356 (1990); *Bell v. Stigers*, 937 F.2d 1340 (8th Cir. 1991); *Jones v. Gutschenritter*, 909 F.2d 1208 (8th Cir. 1990); *Livingood v. Meece*, 477 N.W.2d 183 (N.D. 1991); 1 Nahmod, *Civil Rights and Civil Liberties Litigation, The Law of Section 1983*, 2.01 (3rd ed. 1991)). As one treatise has explained, 42 U.S.C. § 1983 "does not create any substantive rights, but merely provides a remedy for plaintiffs who have been deprived." 1 *Civ. Actions Against State & Loc. Gov't* § 7:1 (2018). However, "[o]nly violations of the federal constitution or federal laws are cognizable under § 1983," and "[v]iolations of state laws may not serve as a basis for a lawsuit under § 1983." *Id.* at § 7:1 (citing *Canell v. Oregon Dep't of Justice*, 811 F. Supp. 546 (D. Or. 1993)).

13

[¶39]  In this case, Kuntz's complaint alleges that Stenehjem, Grabowska, Brocker, and Kluzak "denied the MOU to Plaintiff, subjected Plaintiff to the foregoing conspiracies, unlawful acts and omissions without due process of the law and violation of 42 U.S.C. § 1983, thereby depriving Plaintiff of rights and privileges secured by the Constitution and laws of the United States and/or North Dakota."  His complaint alleges violations of N.D.C.C. § 44-04-18, and the basis for his § 1983 claim is the State's alleged violations of the state open records law, rather than any deprivation of a federal right secured by the U.S. Constitution or federal laws.

[¶40]  In an apparent attempt to preserve his § 1983 claim, Kuntz argues that the district court failed to recognize FOIA as a federally secured right or privilege. However, FOIA applies to federal agencies rather than to the State and state agencies. *See St. Michael's Convalescent Hosp. v. State of California*, 643 F.2d 1369, 1372-74 (9th Cir. 1981) ("The FOIA, generally, provides for the mandatory disclosure of information held by federal agencies, unless the requested material is exempt from mandatory disclosure."); *see also* 5 U.S.C. § 551(1) (defining "agency" as "each authority of the Government of the United States").

[¶41]  We conclude the district court properly dismissed Kuntz's § 1983 and related federal law claims.

### D

[¶42]  Kuntz argues the district court erred by not differentiating the "heightened" pleading requirements for claims of fraud versus claims of deceit.  He essentially contends the particularity required under N.D.R.Civ.P. 9(b) for pleading fraud does not apply to the tort of deceit, claiming notice pleading under N.D.R.Civ.P. 8(a) is sufficient.  He argues the court erred by failing to conclude he had properly pled the elements of deceit.  He further argues the court erred by failing to find the elements of deceit or constructive fraud in his claim against Kluzak for her "exaggerated" demand for search fees.

[¶43]  Generally, N.D.C.C. ch. 9-03 defines fraud and applies in deciding whether parties have the necessary consent for the formation of a contract.  See N.D.C.C.

14

§§ 9-03-04 (when consent deemed voidable); 9-03-07 (fraud classified); 9-03-08 (actual fraud defined); 9-03-09 (constructive fraud defined); 9-03-10 (actual fraud is a question of fact). When fraud is perpetrated to induce a party to enter into a contract, rescission of the contract is the remedy. *See Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 21, 703 N.W.2d 330. "In contrast to fraud, deceit is not an action dependent on a contract; it is a tort cause of action, and allows recovery of damages upon proof of an affirmative misrepresentation or suppression of material facts." *Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 2018 ND 273, ¶ 20, 920 N.W.2d 726; *see also* N.D.C.C. §§ 9-10-02, 9-10-03.

[¶44] Under N.D.C.C. § 9-10-03, "[o]ne who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers," and a "deceit" under this section means:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
4. A promise made without any intention of performing.

N.D.C.C. § 9-10-02.

[¶45] Here, in its order granting judgment on the pleadings, the district court dismissed Kuntz's claims for fraud under N.D.C.C. § 9-03-08, and constructive fraud under N.D.C.C. § 9-03-09, because Kuntz had not alleged, nor were there facts to suggest, that Kuntz and the State, BCI, DOT, Attorney General, or CJIS were parties to a contract, which is required for pleading and recovery on a theory of fraud. We agree with the district court's conclusion that Kuntz has not pled facts establishing he had a contract with the State or its agencies. The State agencies' obligation to provide records and collect any appropriate fees arises not by contract but under statute,

specifically N.D.C.C. § 44-04-18. We therefore conclude the district court properly dismissed Kuntz's claims based on fraud.

[¶46] Kuntz also argues the district court erred in denying his motion to amend the complaint. In its order denying leave to amend, the court held his proposed amendments were futile because he again failed to state a claim for relief for constructive fraud under N.D.C.C. § 9-03-09 and failed to meet the heightened particularity under N.D.R.Civ.P. 9(b) for pleading deceit under N.D.C.C. § 9-10-02.

[¶47] "Under N.D.R.Civ.P. 15(a), once a responsive pleading has been served, a complaint may only be amended by leave of court or by written consent of the opposing party." *Johnson v. Hovland*, 2011 ND 64, ¶ 8, 795 N.W.2d 294. The district court has wide discretion in deciding whether to permit amended pleadings after the time for an amendment has passed. *See id.*; *Darby v. Swenson Inc.*, 2009 ND 103, ¶ 11, 767 N.W.2d 147. We will not reverse the district court's decision whether to grant a party's motion to amend unless there is an abuse of discretion. *Darby*, at ¶ 11. When a proposed amendment would be futile, the district court does not abuse its discretion in denying a motion to amend the complaint. *Id.* at ¶ 12.

[¶48] Section 9-03-09, N.D.C.C., defines "constructive fraud" as:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under that person, by misleading another to the other's prejudice or to the prejudice of anyone claiming under the other; or
2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud.

"[C]onstructive fraud arises from the breach of a duty which is owed ordinarily because of a fiduciary or confidential relationship between the parties." *Land Office Co. v. Clapp-Thomssen Co.*, 442 N.W.2d 401, 406 (N.D.1989). A fiduciary or confidential relationship may be present in a "business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance . . . ordinarily exercise[d]. In a fiduciary relationship, the superior party has a duty to act in the dependent party's best interest." *Nesvig v. Nesvig*, 2004 ND 37, ¶ 20, 676 N.W.2d 73 (citations omitted).

[¶49]   Here, in denying leave to amend, the district court concluded Kuntz failed to state a claim for relief against Kluzak and the DOT based on constructive fraud.  The court further concluded he had neither alleged nor were there facts to suggest Kluzak owed him a duty based on a fiduciary or confidential relationship between the parties. We agree.  Kuntz's claims alleging excessive fees are not premised on consent to contract or obligation, but on alleged violations of N.D.C.C. § 44-04-18.  Moreover, his claims of excessive fees arise from his 2016 open records requests, rather than the July 2017 requests at issue in this action.

[¶50]   Additionally, in refusing to allow him leave to amend to assert a claim of deceit, the district court applied the greater particularity standard under N.D.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  In *Haugrud v. Craig*, 2017 ND 262, ¶ 14, 903 N.W.2d 537, this Court explained that "[u]nder North Dakota notice pleading requirements, a complaint or counterclaim must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'  N.D.R.Civ.P. 8(a)(1)."  The Court then stated, "Deceit is a tort available when a party has breached an obligation imposed by law to honestly deal with another party."  *Haugrud*, at ¶ 14 (quoting *Irish Oil and Gas, Inc. v. Riemer*, 2011 ND 22, ¶ 28, 794 N.W.2d 715).  *See also* N.D.C.C. § 9-10-02 (defining deceit for section 9-10-03).

[¶51]   We have recognized that fraud and deceit are distinct but similar concepts.  To the extent *Haugrud*, 2017 ND 262, ¶ 14, 903 N.W.2d 537, suggests N.D.R.Civ.P. 8(a)(1) applies, we clarify that a deceit claim requires the same degree of specificity in pleadings as a claim for fraud under N.D.R.Civ.P. 9(b).  In this case, the district court held Kuntz had failed to state a claim for relief because his proposed complaint's allegations lacked the "who, what, when, where, and how" required to support his deceit claim.  *See Miller Enterprises, Inc. v. Dog N' Cat Pet Ctrs. of Am.*, 447 N.W.2d 639, 643 (N.D. 1989) ("No particular form or language is required in alleging fraud so long as the elements constituting fraud may be found from reading the whole pleading."); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th

17

Cir. 2007) ("Under Rule 9(b), a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.' . . . [T]he party must typically identify the 'who, what, where, when, and how' of the alleged fraud.").

[¶52] We conclude Kuntz failed to plead sufficient facts with particularity to support a claim for deceit, including how he relied on allegedly false or misleading representations and what the specific misrepresentations were from Stenehjem, Grabowska, Brocker, or Kluzak. *See Thimjon Farms P'ship v. First Int'l Bank & Trust*, 2013 ND 160, ¶ 33, 837 N.W.2d 327. We conclude the district court did not abuse its discretion in denying his motion for leave to amend.

E

[¶53] Kuntz argues that the district court erred in dismissing his complaint for declaratory relief under N.D.C.C. ch. 32-23 when the court failed to address his requested relief in its order.

[¶54] We review declaratory judgment actions under the same standards as other cases. N.D.C.C. § 32-23-07; *see also Denault v. State*, 2017 ND 167, ¶ 6, 898 N.W.2d 452; *Nationwide Mut. Ins. Cos. v. Lagodinski*, 2004 ND 147, ¶ 7, 683 N.W.2d 903. The purpose of a declaratory judgment is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally." N.D.C.C. § 32-23-12; *see also* N.D.R.Civ.P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). "The court may refuse to render or enter a declaratory judgment or decree if such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." N.D.C.C. § 32-23-06.

[¶55] To support a declaratory judgment action, we have said a justiciable controversy must exist, ripe for a judicial determination. *Denault*, 2017 ND 167, ¶ 7, 898 N.W.2d 452. "The Uniform Declaratory Judgments Act does not give a court the power to render advisory opinions or determine questions not essential to the decision

18

of an actual controversy." *Denault*, at ¶ 7 (quoting *Richland Cty. Water Res. Bd. v. Pribbernow*, 442 N.W.2d 916, 918 (N.D.1989)). "Once rights are violated, declaratory relief is inappropriate." *Pribbernow*, at 919. Under "N.D.C.C. § 32-23-06, 'the [district] court's decision to grant or deny a request for a declaratory judgment is discretionary.'" *Nodak Mut. Ins. Co. v. Wamsley*, 2004 ND 174, ¶ 7, 687 N.W.2d 226. A court's discretionary decision will not be set aside on appeal absent an abuse of discretion. *Id.*

[¶56] In his complaint, Kuntz sought declaratory judgments asking the court to issue a multitude of decrees. Because we are remanding for further proceedings, any relief Kuntz seeks on this issue is premature, as our decision must be limited to questions involving existing rights in real controversies. *See Pribbernow*, 442 N.W.2d at 919. Any opinion we might issue on the merits of the requested declaratory relief at this point would be advisory, and we do not address them.


IV

[¶57] We have considered Kuntz's remaining issues and arguments and conclude they are either unnecessary to our decision or are without merit. The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings under N.D.C.C. § 44-04-21.2, relating only to alleged violations of N.D.C.C. § 44-04-18 in response to his July 2017 requests under the open records law, and if necessary to address Kuntz's requests for declaratory relief relating to any violations established.

[¶58]   Jerod E. Tufte
        Daniel J. Crothers
        Lisa Fair McEvers
        Jon J. Jensen
        Gerald W. VandeWalle, C.J.

19